WILLIAMS, J.
hThe mother, S.S., appeals a judgment terminating her parental rights to the minor child, K.B. The trial court found that the mother did not substantially complete the case plan and there was no reasonable expectation of compliance in the foreseeable future. For the following reasons, we affirm.
FACTS
The child, K.B, was born in August 2014. Her mother is S.S. and her father is D.B. In February 2015, an instanter order was *1012 issued alleging ongoing use of metham-phetamines by the mother based on several positive drug screens from October 2014 through January 2015, while K.B. was in her care and custody. K.B. was removed from her mother’s care and placed in the custody of the Department of Children and Family Services (“DCFS”). In April 2015, K.B. was adjudicated a child in need of care and the disposition was to continue custody with the DCFS.
After a hearing in July 2015, the trial court approved the initial case plan with the goal of reunification, requiring the mother to demonstrate her ability to provide a stable home for the child by maintaining adequate housing and income. The plan also required the mother to participate in substance abuse treatment with random drug screens. All subsequent case plans filed in the record included these same issues that needed to be resolved in order for the child to be returned to the mother’s home.
In February 2016, the court changed the goal to adoption, finding a lack of substantial compliance with the case plan by the mother and father. DCFS filed a petition to terminate the parental rights of S.S. and D.B., alleging the grounds of LSA-Ch.C. art. 1015(5). After a hearing, the trial 12court issued oral reasons for judgment finding that the state had proven by clear and convincing evidence that the parents had failed to substantially comply with the case plan by continuing to use drugs and failing to obtain substance abuse treatment. In addition, the court found that based on the parents’ performance during the past year, there was no reasonable expectation of compliance with the case plan in the foreseeable future and that the termination of parental rights was in the child’s best interest. The trial court rendered judgment terminating the parental rights of S.S. and D.B. and certifying the child for adoption. S.S. appeals the judgment.
DISCUSSION
The mother, S.S., contends the trial court erred in terminating her parental rights. S.S. argues that she should be allowed additional time to obtain inpatient substance abuse treatment based on her substantial compliance with all other requirements of the case plan.
The grounds for termination of parental rights include a showing that at least one year has elapsed since the child was removed from the parent’s custody pursuant to a court order, there has been no substantial parental compliance with a case plan for services approved by the court as necessary for the safe return of the child and there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future. LSA-Ch.C. art. 1015(5). The petitioner has the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence. LSA-Ch.C. art. 1035. Under Article 1015(5), lack of parental compliance with a case plan may be shown by evidence of the parent’s repeated failure to comply with the required program of treatment provided in the case plan or the persistence of |sconditions that led to removal of the child. LSA-Ch.C. art. 1036( C). The trial court’s factual findings in determining whether a basis for the termination of parental rights has been proven will not be set aside in the absence of manifest error. State in the Interest of V.T., 609 So.2d 1105 (La. App. 2d Cir. 1992), writ denied, 614 So.2d 1269 (La. 1993).
In the present case, during the termination hearing in May 2016, the state presented the testimony of Rosie Owens, a DCFS foster care worker. Owens testified that the child, K.B., entered state custody *1013 in February 2015, based on reports that the mother, S.S., was having positive drug screens and not getting treatment for substance abuse while involved with the agency for her other two children. Owens stated that under the court-approved case plan, the parents were required to maintain housing adequate in size for the family, remain free of illegal drugs, provide proof of adequate income, complete a parenting course and attend all visits with the child and all court hearings. Owens testified that the primary areas of noncompliance for S.S. were her continued drug abuse and need for adequate housing. Owens stated that S.S. has lived in three residences since February 2015, when she lived in a mobile home. In June 2015, S.S. moved into a one-bedroom apartment with D.B. that DCFS determined was not adequate in size; then she moved into the maternal grandmother’s house, which was not approved by DCFS due to issues of domestic violence and drug use by the grandmother’s live-in boyfriend.
Regarding the mother’s substance abuse, Owens testified that S.S. had attended outpatient drug treatment sessions, but did not successfully complete the program because of a positive drug screen in May 2015, when she was referred to inpatient drug treatment at Rayville Recovery. Owens Instated that as of the date of the trial, S.S. had never attended the inpatient drug treatment program despite telling DCFS a number of times that she planned to go, but then saying that she wanted to attend an inpatient facility in Monroe and not Rayville. Owens did not know of any inpatient facility available in Monroe and stated that DCFS was required to follow the referral to Rayville made by the Office of Behavioral Health. Owens testified that S.S. had not substantially complied with the requirement to submit to random drug screens because in June 2015, S.S. submitted a “cold” urine sample that could not be tested and refused to provide another sample, then S.S. missed drug screens in October and November 2015 and in January and February 2016. Owens stated that although S.S. has said that she was working at Waffle House, she had not provided any proof of income to DCFS since August 2015, when she submitted pay stubs at a court hearing. Owens acknowledged that S.S. had attended all of the weekly visits with the child at the DCFS office and that her visits were generally good, she was attentive to the child and usually brought snacks or toys for the child to the visits. Owens stated that S.S. attended the minimum six parenting sessions to complete the course.
The mother, S.S., testified that she was currently living with D.B. in her mother’s three-bedroom rental house. S.S. stated that the maternal grandmother’s boyfriend had moved out one month before and no longer resided at the house. S.S. testified that the week before the hearing, she had submitted to DCFS paycheck stubs showing her income for the month of April 2016. However, S.S. stated that she was currently not working after quitting her job at the Waffle House two weeks before so that she could go to inpatient drug rehab. S.S. testified that she had not completed the 1 ¡jinpatient drug treatment that was initially recommended in May 2015, but asserted she was now “willing” to go to Rayville and was supposed to call that day to see if a bed was available. S.S. acknowledged that her drug abuse had been a continuing problem and that in the last week, at a drug screen on May 18, 2016, she had tested positive for the presence of methamphetamine. S.S. testified that she was asking the court to allow her an additional 90 days to complete the inpatient drug treatment required in the case plan.
The foster parents testified that K.B. had been living with them for more than *1014 one year, she was healthy and has her own room. They stated that if K.B. was freed for adoption, then they intended to adopt the child.
In her brief, S.S. asserts that she has shown improvement and should be given more time to complete inpatient drug treatment and to attend AA meetings. However, the record shows that S.S. has already gone for a period of one full year without attending the inpatient drug treatment required in the case plan or providing documentation of attendance at a single AA meeting. The testimony demonstrates that despite having been advised in May 2015 that she needed to complete inpatient drug treatment, S.S. had not taken action to comply with this significant requirement in the subsequent year. This failure to obtain treatment shows the persistence of the primary condition that led to the child’s removal. S.S.’s lack of compliance is also shown by her repeated failure to submit to random drag screens as required in the case plan. In addition, despite her submission of paycheck stubs for one month of work shortly before the termination hearing, S.S. failed to substantially comply with the plan requirement that she provide DCFS with proof of income sufficient to meet her family’s needs.
|nThe trial court heard the testimony and weighed the credibility of the witnesses. Based upon this record, we cannot say the trial court was clearly wrong in finding that the state proved with clear and convincing evidence that S.S. has failed to substantially comply with the case plan. Thus, this assignment of error lacks merit.
S.S. contends the trial court erred in finding that there is no reasonable expectation of significant improvement in her condition or conduct in the near future. S.S. argues that her completion of parenting classes, visitation with the child and her willingness to attend inpatient drag treatment provides the basis for a reasonable expectation that her conduct will significantly improve.
Under Article 1015(5), the lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future may be proved with evidence of substance abuse that renders the parent incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm based upon an established pattern of behavior, or any other conduct that reasonably indicates the parent is unable or unwilling to provide an adequate permanent home for the child. LSA-Ch.C. art. 1036(D). Reformation sufficient to prevent termination of parental rights requires that the parent demonstrate substantial change, such as significantly altering or modifying that behavior which served as the basis for the state’s removal of the child from the home. State in the Interest of T.J., 48,612 (La. App. 2 Cir. 9/11/13), 124 So.3d 484; State in the Interest of TD v. Webb, 28,471 (La. App. 2 Cir. 5/8/96), 674 So.2d 1077.
The primary concern of the courts and the state is the effort to secure the best interest of the child, including the termination of parental rights if | justifiable grounds exist and are proven. State in the Interest of S.A.T., 49,143 (La. App. 2 Cir. 5/14/14), 141 So.3d 816. The evidence must allow the conclusion that termination is in the best interest of the child. State in the Interest of TD, supra.
In her brief, S.S. contends the record contains a substantial indication of her reform, including her completion of parenting classes, payment of child support, visitation with the child, employment and readiness to enter inpatient drag treatment. Contrary to the mother’s contention, the record does not establish that she has *1015 paid child support for K.B., that she is employed or that she has significantly modified the behavior that caused the child’s removal from her care.
Although S.S. testified that her wages were subject to assignment for child support, she was not sure whether support for K.B. was being withdrawn from her pay in addition to support for her other two children. At the time' of the termination hearing, S.S. was not employed after having quit her job without knowing if there was a spot available for her at the inpatient treatment facility. In addition, her positive drug test for methamphetamine a week before the termination hearing shows a continuation of the behavior that led to the child’s removal from the home.
The mother’s repeated past failure to attend inpatient drug treatment and her positive drug test at the time of the termination hearing show that S.S. has not significantly altered her behavior. Rather, her continued drug use renders her incapable of exercising her parental responsibilities without exposing the child to a risk of serious harm. The state also presented evidence that S.S. failed to attend domestic violence counseling after D.B. committed a battery against her. Such failure is an example of other conduct |8that indicates S.S. is unwilling or unable to provide an adequate permanent home for the child based on a pattern of behavioi’.
After reviewing the record, we conclude that the mother’s past failure to complete inpatient drug treatment and to attend counseling supports the finding that there is no reasonable expectation of significant improvement in her condition in the near future. Further, based upon the mother’s lack of compliance with the case plan and the absence of any reasonable expectation for her reformation in the future, the trial court did not err in finding that the termination of parental rights is in the best interest of the child. Thus, the assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, the trial court’s judgment terminating the mother’s parental rights as to the child, K.B., is affirmed. No costs are assessed in this appeal.
AFFIRMED.